UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -:

VALENTE GARCIA, FRANKLYN PEREZ,   :   15 Civ. 6292 (JCF)
DELFINO TLACOPILGO, MIGUEL ROMERO  :
LARA, MIGUEL BOTELLO GONZAGA,    :    MEMORANDUM
JESUS DELGADO, JUSTINO GARCIA, and :   AND  ORDER
LUIS MAGAÑA,                  :
                            :
        Plaintiffs,        :
                            :
  - against -          :

VILLAGE RED RESTAURANT CORP. d/b/a :
WAVERLY RESTAURANT, CHRISTINE    :
SERAFIS KASAMPAS, and NICHOLAS   :
SERAFIS,                     :
                            :
        Defendants.      :

- - - - - - - - - - - - - - - - - -:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/17

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    The plaintiffs -- Valente Garcia, Franklyn Perez, Delfino Tlacopilgo, Miguel Romero Lara, Miguel Botello Gonzaga, Jesus Delgado, Justino Garcia, and Luis Magaña -- bring this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action against Village Red Restaurant Corp. ("Village Red"), Christine Serafis, and Nicholas Serafis. The plaintiffs allege that during their employment at Waverly Restaurant ("Waverly"), the defendants violated the FLSA's and NYLL's overtime, minimum wage, and tools-of-the-trade provisions; the plaintiffs also claim that the defendants' failure to provide spread-of-hours pay, wage notices, and wage statements violated the NYLL. The plaintiffs have moved for summary judgment on their claims, seeking damages, liquidated

1

damages, prejudgment interest, attorneys' fees and costs, and post-judgment interest. The defendants have cross-moved for partial summary judgment, arguing that Ms. Serafis is not the plaintiffs' employer. For the reasons that follow, the defendants' motion is granted, and the plaintiffs' motion is granted in part and denied in part.

Background

Waverly is a twenty-four hour diner in Manhattan that provides both dine-in and delivery services. (Plaintiffs' Statement of Undisputed Facts ("Pl. 56.1 Statement"), ¶ 1). Waverly was first opened in 1979 or 1980 by Mr. Serafis, Gus Benetos, and John Siderakis. (Pl. 56.1 Statement, ¶ 18). Later, Mr. Siderakis bought out his partners; however, Mr. Serafis retained the right to purchase the restaurant and continued to manage and operate Waverly. (Pl. 56.1 Statement, ¶¶ 19-20). In 1993, Mr. Serafis transferred the purchase right to his daughter, Ms. Serafis, for "estate purposes"; some time later, she exercised this right. (Pl. 56.1 Statement, ¶¶ 21-23). There was some collaboration between Mr. Serafis and Ms. Serafis in the purchase of the restaurant, and Mr. Serafis told Ms. Serafis that "we buy this business and it's for you"; however, Mr. Serafis does not remember personally providing any money to buy the restaurant and stated that he "let my daughter buy the business instead of me." (Pl. 56.1 Statement, ¶¶ 23-24; Defendants' Rule 56.1 Statement ("Def. 56.1 Statement"),

¶ 6; Plaintiffs' Rule 56.1 Counter Statement of Undisputed Material Facts, ¶¶ 5-6). After the purchase, she did not operate the restaurant but "gave [Mr. Serafis] permission" to continue to manage Waverly. (Pl. 56.1 Statement, ¶ 29).

On January 15, 2003, Village Red was incorporated, and it has since owned and operated Waverly. (Pl. 56.1 Statement, ¶¶ 2-3). Ms. Serafis is the president and sole shareholder of Village Red. (Pl. 56.1 Statement, ¶¶ 7-9). The building where Waverly is located is owned by 135 Waverly Place LLC, and Ms. Serafis is the sole shareholder of that entity. (Pl. 56.1 Statement, ¶ 16). Mr. Serafis and Ms. Serafis have referred to Ms. Serafis as the "owner" of Waverly even though it is owned by Village Red. (Pl. 56.1 Statement, ¶¶ 10-11, 14-15).

Ms. Serafis testified at her deposition that she gave Mr. Serafis complete authority to run the restaurant, and Mr. Serafis continues to hire and fire employees and set wages, schedules, policies, and pay practices. (Pl. 56.1 Statement, ¶¶ 29-35, 38). Mr. Serafis signs checks in Ms. Serafis' name using a stamp bearing her signature. (Pl. 56.1 Statement, ¶¶ 45-47, 52-54). Ms. Serafis received a yearly salary of around $60,000.00 from Waverly during the period at issue. (Pl. 56.1 Statement, ¶¶ 66-70). Mr. Serafis "basically put everything he owns in [Ms. Serafis'] name"; she also owns Mr. Serafis' apartment. (Pl. 56.1 Statement, ¶¶ 27-28).

Ms. Serafis lives in Greece and does not oversee the Waverly employees. (Def. 56.1 Statement, ¶¶ 18, 20).

Prior to 2011 or 2012, there was no apparent system at Waverly for documenting employee work time or pay. (Pl. 56.1 Statement, ¶ 74). In 2011 or 2012, Mr. Serafis installed a time clock; however, the records created by the time clock were often not accurate because employees would forget to punch in or out, and the time clock had a mechanical problem. (Pl. 56.1 Statement, ¶¶ 74-77). In 2014 and 2015, Mr. Serafis and a manager began keeping accurate records of employee pay in the "Red Book." (Pl. 56.1 Statement, ¶¶ 78-80, 84-85). The Red Book shows that the plaintiffs were paid weekly: generally, a daily salary was multiplied by how many days were worked in a week; the pay structure did not account for how many hours were worked in a day. (Pl. 56.1 Statement, ¶¶ 86, 88; Red Book, attached as Exh. S to Declaration of Louis Pechman dated Jan. 31, 2017).

Starting in January 2012, another set of books was created, but these records were inaccurate and did not reflect what employees were paid or how they were paid. (Pl. 56.1 Statement, ¶¶ 99, 115-118, 120-122). It shows the plaintiffs being paid an hourly rate, an overtime rate, spread of hours, tip credit, meal credit, and overtime pay. (Pl. 56.1 Statement, ¶ 104). The plaintiffs assert, and the defendants do not appear to dispute, that there is no apparent legitimate reason for this second set of

records and that the Red Book is the most accurate history of what the plaintiffs were paid. (Pl. 56.1 Statement, ¶¶ 103, 117; Defendants' Responses to Plaintiffs' Local Rule 56.1 Statement ("Def. 56.1 Counter Statement"), ¶¶ 74-126).

The plaintiffs were waiters, servers, countermen, hosts, kitchen helpers, and deliverymen during the relevant period. (Pl. 56.1 Statement, ¶¶ 149, 165, 184, 199, 220, 239, 259). They usually worked more than sixty hours per week. (Pl. 56.1 Statement, ¶ 146). They were paid weekly in cash based on a daily rate rather than an hourly rate. (Pl. 56.1 Statement, ¶¶ 116, 138, 269). They were not provided wage statements or weekly paystubs during the period at issue. (Pl. 56.1 Statement, ¶¶ 271-272).

On their motion for summary judgment, the plaintiffs contend that the defendants are their employers. They also argue that if Ms. Serafis is found not to be their employer, then the corporate veil should be pierced. The plaintiffs move on their FLSA and NYLL claims, stating that they were not paid overtime or minimum wages and that they were not compensated for purchasing tools-of-the-trade. The plaintiffs also contend that the defendants did not comply with the wage notice, wage statement, or spread-of-hours provisions in the NYLL. The plaintiffs seek compensatory damages, liquidated damages, prejudgment interest, attorneys' fees and costs, and post-judgment interest. On their motion for partial

summary judgment, the defendants contend that Ms. Serafis was not the plaintiffs' employer under the FLSA or NYLL.

Discussion

A.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court will "grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The opposing party then must come forward with specific materials establishing the existence of a genuine dispute. Id. at 324. Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Id. at 322-23. Where "the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015) (quoting Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995)).

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Smith v. Barnesandnoble.com, LLC</u>, 839 F.3d 163, 166 (2d Cir. 2016). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," <u>Anderson</u>, 477 U.S. at 249, and summary judgment may be granted where the nonmovant's evidence is conclusory, speculative, or not significantly probative, <u>id.</u> at 249-50. When evaluating cross-motions for summary judgment, the court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration. <u>Morales v. Quintel Entertainment, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001).

B.  <u>The Defendants' Joint Liability as Employers</u>

The plaintiffs maintain that Village Red, Mr. Serafis, and Ms. Serafis were their employers under to the FLSA and NYLL and that the enterprise exceeded $500,000.00 in annual gross volume of sales during the relevant period. (Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Memo.") at 1-2). There is no doubt that Village Red and Mr. Serafis were the plaintiffs' employers, and Village Red and Mr. Serafis readily admit to their employer status; the defendants also do not dispute

the FLSA coverage allegation.  (Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment Dismissing the Complaint Against Christine Serafis ("Def. Memo.") at 7; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Opp. Memo.") at 5; Def. 56.1 Counter Statement, ¶ 4).  However, the defendants argue that Ms. Serafis was not an employer because she never participated in the operation of Waverly, maintaining that she is the president and sole shareholder of the corporate entities only for "estate tax purposes." (Def. Memo. at 9).

1.  Legal Standard

The statutory definition of "employer" sweeps broadly under the FLSA.[1]  Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 140 (2d Cir. 2008).  An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  An employee is "any individual employed by an employer."  29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).

---

[1]  The FLSA employee-employer canon also applies to claims brought under the NYLL: "[D]istrict courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."  Inclan v. New York Hospitality Group, Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (quoting Ho v. Sim Enterprises Inc., No. 11 Civ. 2855, 2014 WL 1998237, at *10 (S.D.N.Y. May 24, 2014)).

"[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' . . . determined by reference not to 'isolated factors but rather upon the circumstances of the whole activity . . . .'" Saleem v. Corporate Transportation Group, Ltd., __ F.3d __, __, 2017 WL 1337227, at *5 (2d Cir. 2017) (quoting Barfield, 537 F.3d at 141). The Second Circuit has established a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013) (quoting Barfield, 537 F.3d at 143). These include the four factors identified in Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir. 1984): (1) the power to hire and fire the employees, (2) the ability to supervise and control employee work schedules or conditions of employment, (3) the authority to determine the rate and method of payment, and (4) the maintenance of employment records. Id. at 12. These factors are sufficient but not necessary to establish employment status. Barfield, 537 F.3d at 142. With this guidance in mind, I turn to whether Ms. Serafis is an employer under the FLSA.

    2.  Analysis

The defendants assert that there is no evidence showing that

Ms. Serafis controlled the terms of the plaintiffs' employment and that she therefore is not their employer. (Def. Memo. at 9-12). The plaintiffs reply that Ms. Serafis was their employer because she is the president and sole shareholder of Village Red, and they assert that Ms. Serafis' consenting to Mr. Serafis' management of the restaurant constituted operational control of Waverly. (Pl. Memo. at 20-21).

Ms. Serafis is the president and sole shareholder of Village Red, and the defendants admit that, in that capacity, she technically had the authority to hire and fire, set wages and managerial practices, and sell the restaurant. (Pl. 56.1 Statement, ¶ 5; Def. 56.1 Counter Statement, ¶ 5). She and Mr. Serafis have both referred to her as "the owner" of Waverly even though it is owned by Village Red. (Pl. 56.1 Statement, ¶¶ 8-11, 14-16). There is some evidence that Ms. Serafis gave Mr. Serafis "full permission to run the Waverly" and to use the stamp with her signature. (Pl. 56.1 Statement, ¶¶ 29-32, 46-47). She occasionally visits the restaurant, and one of the plaintiffs observed that she went into the restaurant's office two or three times. (Pl. 56.1 Statement, ¶ 207). Ms. Serafis receives a yearly salary of around $60,000.00 from Waverly. (Pl. 56.1 Statement, ¶¶ 66-69). The plaintiffs argue that these facts establish -- or, in the alternative, create a dispute of material fact -- that Ms. Serafis is an employer.

This evidence is insufficient to rebut the defendants' position. While a putative employer need not directly control employees to be liable under the FLSA, some "individual involvement" in a company is generally required: an individual defendant must at least exercise "operational control" over the employee's employment. Irizarry, 722 F.3d at 106-09; see also Herman v. RSR Security Services Ltd., 172 F.3d 132, 140 (2d Cir. 1999). The Second Circuit has stated that "[i]t is appropriate . . . to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation -- even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." Irizarry, 722 F.3d at 109.

The plaintiffs have provided no facts showing that Ms. Serafis ever exercised operational authority over the restaurant or indirectly influenced the employees' terms of employment. There is no evidence that she instructed Mr. Serafis how to run the restaurant. (Def. 56.1 Statement, ¶¶ 21-22). There is no evidence that Ms. Serafis' consenting to Mr. Serafis' continued operation of Waverly changed the plaintiffs' employment conditions. It is apparent that she did not influence the employees' wages, work hours, or conditions, nor did she affect who was hired or fired. The plaintiffs' evidence only shows that Ms. Serafis is the sole

shareholder and president of Village Red and that she has executed agreements to ensure that Mr. Serafis could continue to operate the restaurant. The evidence that the plaintiffs have offered is therefore insufficient to show a dispute of material fact as to whether Ms. Serafis was the plaintiffs' employer. See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 309-11 (S.D.N.Y. 2011) ("As to [the defendant's] status as sole shareholder and President of Fiskardo, the courts that have addressed the question of whether stock ownership or a position as corporate officer in and of themselves make an individual an employer under the FLSA have answered the question in the negative.").

The plaintiffs argue in the alternative that because Ms. Serafis signed a power of attorney naming Mr. Serafis her agent, Mr. Serafis' employment status is therefore imputed to Ms. Serafis. (Pl. Memo. at 24 (citing Heine v. Newman, 856 F. Supp. 190, 195 (S.D.N.Y. 1994) ("Ashley, as Heine's attorney-in-fact alter-ego, stood in the shoes of Heine . . . .")))。 But there is no legal reason why this document would impute Mr. Serafis' legal liability under the FLSA to Ms. Serafis.

In their final attempt, the plaintiffs argue that Ms. Serafis should be held liable as a matter of public policy:

> The fraud Defendants perpetrated [by putting Village Red solely under Ms. Serafis' name] distinguishes this case from the next, and compels the conclusion that Christine Serafis must be held individually responsible for the violations of Plaintiffs' rights to uphold the

> legislative purpose of the FLSA. . . . Not imposing
> individual liability on Christine Serafis would create
> a dangerous precedent for other employers seeking to
> shield their personal assets and would be contrary to
> the underlying purposes of the FLSA.

(Pl. Memo. at 25-27). The plaintiffs cite no case law in support of this proposition, nor do they indicate any legal basis for finding that the conveyance of the business was fraudulent.

The defendants point to an abundance of evidence showing that Ms. Serafis' involvement with the restaurant does not satisfy the economic realities test. She has never operated the restaurant, made personnel decisions, received financial or employee reports, hired or fired employees, scheduled hours, supervised work, or paid employees. (Def. 56.1 Statement, ¶¶ 18-19, 23-28). Mr. Serafis does not ask her permission before signing checks in her name, and it appears that he signs checks using her name only because Ms. Serafis' "signature is required to be endorsed on the checks by the bank because only her name is on corporate stock." (Def. 56.1 Statement, ¶¶ 37, 39).

The defendants have demonstrated that there is a lack of evidence in the record that Ms. Serafis is an employer. Conversely, the plaintiffs have not carried their burden of showing that there is a genuine dispute about Ms. Serafis' status. Therefore, the defendants' motion for summary judgment is granted, and the plaintiffs' motion on that issue is denied.

C.    Piercing the Corporate Veil and Alter Ego Liability

The plaintiffs argue for the first time in this motion that Village Red is the alter ego of Ms. Serafis and that the corporate veil should be pierced pursuant to federal common law. (Pl. Memo. at 28-32). The defendants respond that this remedy is barred because it was not raised earlier in the action. (Def. Opp. Memo. at 18). Additionally, they argue that New York law on veil piercing should be applied and that the plaintiffs cannot meet its more stringent requirements. (Def. Opp. Memo. at 17-18).

1.    Timeliness of Plaintiffs' Alter Ego Claim

Federal courts generally require that veil piercing be sufficiently pled in the complaint or at least raised formally early in an action. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (affirming Rule 12(b)(6) dismissal of veil piercing claim); Scarbrough v. Perez, 870 F.2d 1079, 1083-84 (6th Cir. 1989) (holding that district court did not err when it refused to consider veil piercing liability not pled in the complaint); Luyster v. Textron, Inc., No. 06 Civ. 4166, 2007 WL 1792505, at *2-3 (S.D.N.Y. June 18, 2007) (dismissing veil piercing allegation that was not pled in original complaint and requiring plaintiff to amend complaint to pursue it); EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) ("In this district, veil-piercing claims are subject to the pleading requirements imposed by [Federal Rule of Civil Procedure]

8(a) . . . ."); <u>Rolls-Royce Motor Cars, Inc. v. Schudroff</u>, 929 F. Supp. 117, 122 (S.D.N.Y. 1996) (veil piercing claim subject to pleading requirements of Rule 8(a)); <u>Stockmar v. Warrec Co.</u>, 844 F. Supp. 103, 106 (D. Conn. 1994) (requiring alter ego liability to be pled in complaint). The New York standard on this issue is also instructive. Even though the New York Court of Appeals does not consider veil piercing to be a freestanding action, <u>see</u> <u>Morris v. New York State Department of Taxation and Finance</u>, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810 (1993) (veil piercing is equitable in nature and "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners"), it appears to require that veil piecing be pled in the complaint, <u>see</u> <u>East Hampton Union Free School District v. Sandpebble Builders, Inc.</u>, 16 N.Y.3d 775, 776, 919 N.Y.S.2d 496, 497 (2011) ("In order for a plaintiff to state a viable claim against a shareholder of a corporation in his or her individual capacity for actions purportedly taken on behalf of the corporation, plaintiff must allege facts that, if proved, indicate that the shareholder exercised complete domination and control over the corporation and 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice.'" (quoting <u>Morris</u>, 82 N.Y.2d at 142, 603 N.Y.S.2d at 811));

15

Walkovszky v. Carlton, 18 N.Y.2d 414, 420, 276 N.Y.S.2d 585, 590 (1966) (dismissing claim against defendant because complaint failed to adequately plead veil piercing).

The plaintiffs' complaint does not plead alter ego liability, nor does it suggest that the corporate veil should be pierced or allege facts from which it could be inferred that the corporate form has been disregarded. Indeed, there appears to be no reason that the defendants would have been on notice of the plaintiffs' veil piercing theory earlier in this case. For these reasons alone, the plaintiffs' veil piercing theory may be rejected. Nevertheless, I will also address this claim on the merits.

2. Federal Claims and Alter Ego Liability

If a claim involves a federal statute and that statute demands national uniformity, then the federal common law of veil piercing applies. See United States v. Peters, 732 F.3d 93, 103 n.4 (2d Cir. 2013) ("[B]ecause this case arises under federal question jurisdiction and involves a federal statute that 'demands national uniformity,' federal common law, not New York State law, presumably controls the question of whether the corporate veil should be pierced." (quoting Brotherhood of Locomotive Engineers v. Springfield Terminal Railway Co., 210 F.3d 18, 26 (1st Cir. 2000))); Burberry Ltd. v. Horowitz, 534 F. App'x 41, 46 & n.1 (2d Cir. 2013) (acknowledging that federal common law of veil piercing applied to action brought in trademark infringement action that

16

alleged federal and state claims); <u>Brotherhood of Locomotive Engineers</u>, 210 F.3d at 26 ("If the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision."); <u>Massachusetts Laborers' Health and Welfare Fund v. Starret Paving Corp.</u>, 845 F.2d 23, 27 (1st Cir. 1988) (federal common law of veil piercing applied to ERISA claim); <u>Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany, N.A.</u>, 791 F.2d 242, 245 n.1 (2d Cir. 1986) (stating that federal common law on veil piercing would apply to claim brought under federal statutes); <u>Burke v. Hamilton Equipment Installers, Inc.</u>, No. 02 CV 519, 2006 WL 3831380, at *10 (W.D.N.Y. Oct. 16, 2006) (federal common law of veil piercing applied to ERISA claims); <u>Goldberg v. Colonial Metal Spinning and Stamping Co.</u>, No. 92 Civ. 3721, 1993 WL 361672, at *5 (S.D.N.Y. Sept. 14, 1993) (same); <u>but see Capmark Financial Group Inc. v. Goldman Sachs Credit Partners L.P.</u>, 491 B.R. 335, 348-49 (S.D.N.Y. 2013) (suggesting that state law on veil piercing generally applies to cases arising under federal law). This is particularly salient for federal labor law actions. <u>See Brotherhood of Locomotive Engineers</u>, 210 F.3d at 26 ("National uniformity is essential in the interpretation of labor law. Federal courts have fashioned a body of federal common law to govern labor disputes, recognizing that harmonious labor relations are essential to interstate commerce.").

"[I]n determining whether to disregard the corporate form, [the court] must consider the importance of the use of that form in the federal statutory scheme, an inquiry that generally gives less deference to the corporate form than does the strict alter ego doctrine of state law." Lowen v. Tower Asset Management, Inc., 829 F.2d 1209, 1220 (2d Cir. 1987) (citation omitted). In deciding whether federal law or state law should apply to veil piercing, the Supreme Court's discussion in United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979), is helpful:

> Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules. Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy "dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law." Undoubtedly, federal programs that "by their nature are and must be uniform in character throughout the Nation" necessitate formulation of controlling federal rules. Conversely, when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision. Apart from considerations of uniformity, we must also determine whether application of state law would frustrate specific objectives of the federal programs. If so, we must fashion special rules solicitous of those federal interests. Finally, our choice-of-law inquiry must consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law.

Id. at 727-29 (citations omitted) (footnotes omitted) (first quoting United States v. Standard Oil Co., 332 U.S. 301, 310 (1947); and then quoting United States v. Yazell, 382 U.S. 341, 354 (1966))). In light of this authority, federal common law

should be applied to veil piercing allegations brought under the FLSA. Otherwise, companies operating in multiple states would be subject to different legal principles, and employees could obtain certain relief in some states but not others, a situation at odds with the nationwide policies underlying the FLSA.

There are two circumstances where an individual may be held liable for a corporation's liabilities under federal common law. First, an individual's total domination and control of a subject corporation such that she is conducting her own personal business rather than corporate business is sufficient to impose alter ego liability. Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 139 (2d Cir. 2010); Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 53 (2d Cir. 2008); Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 777 (2d Cir. 1995); Lowen, 829 F.2d at 1221; see also First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 628-29 (1983) ("In discussing the legal status of private corporations, courts in the United States and abroad[] have recognized that an incorporated entity . . . is not to be regarded as legally separate from its owners in all circumstances. Thus, where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, we have held that one may be held liable for the actions of the other." (emphasis omitted) (footnotes omitted)). Alternatively, the corporate form

may be disregarded if the individual used the corporate entity to perpetrate a fraud or injustice. <u>Williamson</u>, 542 F.3d at 53; <u>Golden Horn Shipping Co. v. Volans Shipping Co.</u>, No. 14 Civ. 2168, 2014 WL 5778535, at *2 (S.D.N.Y. Nov. 6, 2014); <u>British Marine PLC v. Aavanti Shipping & Chartering Ltd.</u>, No. 13 CV 839, 2013 WL 6092821, at *5 (E.D.N.Y. Nov. 19, 2013); <u>see also</u> <u>First National City Bank</u>, 462 U.S. at 629 ("In addition, our cases have long recognized 'the broader equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice.'" (quoting <u>Taylor v. Standard Gas Co.</u>, 306 U.S. 307, 322 (1939))).

In determining whether to pierce the corporate veil, courts consider a number of factors, such as:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms' length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

<u>Freeman v. Complex Computing Co.</u>, 119 F.3d 1044, 1053 (2d Cir. 1997); <u>see also</u> <u>Burberry</u>, 534 F. App'x at 46 (stating that these factors are generally considered in veil piercing cases); <u>Thomson-CSF</u>, 64 F.3d at 778 (same); <u>Budisukma Permai SDN BHD v. N.M.K. Products & Agencies Lanka (Private) Ltd.</u>, 606 F. Supp. 2d 391, 399

(S.D.N.Y. 2009) (using this standard in veil piercing federal common law analysis). These factors are not exclusive, and "courts have considered additional factors as well. Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result.'" <u>Williamson</u>, 542 F.3d at 53 (citation omitted) (quoting <u>William Wrigley Jr. Co. v. Waters</u>, 890 F.2d 594, 601 (2d Cir. 1989)); <u>see also</u> <u>Brotherhood of Locomotive Engineers</u>, 210 F.3d at 26 (alter ego liability "is founded only on the broad principle that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.'" (quoting <u>Town of Brookline v. Gorsuch</u>, 667 F.2d 215, 221 (1st Cir. 1981))). This structure is appropriate here given the FLSA's broad remedial purposes. <u>See</u> <u>Irizarry</u>, 722 F.3d at 110; <u>see also</u> <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 366 (S.D.N.Y. 2005) (holding in FLSA and NYLL action that corporation was individual's alter ego when individual completely dominated corporation).

### 3. State Law Claims and Alter Ego Liability

For the state labor law claims, different rules apply. Because supplemental jurisdiction is exercised over the state law claims, I apply New York choice of law rules to decide which law governs alter ego liability. <u>See</u> <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 1002 (2d Cir. 1989); <u>Long Beach Road Holdings, LLC v. Foremost</u>

Insurance Co., 75 F. Supp. 3d 575, 586 (E.D.N.Y. 2015). In New York, the law of the state of incorporation governs this inquiry, Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995), and Village Red was incorporated in New York.

To pierce the corporate veil under New York law, a party must establish two prongs: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." Broadridge Securities Processing Solutions, LLC v. Khashoggi, 507 F. App'x 57, 57 (2d Cir. 2013) (quoting American Fuel Corp. v. Utah Energy Development Co., 122 F.3d 130, 134 (2d Cir. 1997)). The ten Freeman factors referenced above are also relevant to this inquiry. See In re Vebeliunas, 332 F.3d 85, 90 n.3 (2d Cir. 2003).

4. Analysis

The plaintiffs have not satisfied their burden under either federal or state law. They argue:

> Christine Serafis admitted that she observes no formalities -- she, the sole shareholder and officer of Village Red Restaurant, holds no elections or meetings, keeps no corporate records, and has no officer duties. Second, Christine Serafis receives a "salary" for no work performed, which is evidence of her personal use of corporate funds.

(Pl. Memo at 30 (citations omitted)). While corporate formalities may not have been observed, there is no evidence that Ms. Serafis controlled the corporation or exerted any decision-making power

over it, other than to allow Mr. Serafis to operate it.  Nor is
there evidence of commingling of funds; while Ms. Serafis receives
a "salary" and has asked for and received a higher salary (Pl.
56.1, ¶¶ 66-70), Mr. Serafis controls the accounts (Affidavit of
Christine Serafis dated Jan. 17, 2017, ¶ 14).

Additionally, the plaintiffs have not carried their burden on
the fraud or injustice elements of the federal and New York tests.
They first argue that "Christine Serafis utilized the corporate
form to perpetrate . . . a fraud upon taxing authorities, wherein
she could avoid estate taxes."  (Pl. Memo. at 30).  Yet, the
plaintiffs provide no evidence indicating that she has avoided or
intends to avoid estate taxes.  The plaintiffs also argue that use
of the corporate form is a fraud "upon Plaintiffs" because it
limits "the financial resources accessible to them in recuperating
unpaid wages.  Defendants' fraud upon Plaintiffs is also apparent
in Defendants' use of false payroll records that they required
Plaintiffs to sign." (Pl. Memo. at 30).  Yet the defendants' use
of the corporate form to limit liability is not, by itself,
fraudulent.  The plaintiffs' motion for alter ego liability is
therefore denied.

D.   Wage Claims, Liquidated Damages, and Interest

The plaintiffs have provided voluminous documentation in
support of their wage-and-hour claims.  However, they have not
computed the total damages that they are requesting, nor have they

suggested how any such computation would be performed. Additionally, while the plaintiffs partially rely on the Red Book to demonstrate the defendants' pay practices, the names in the copy of the Red Book filed by the plaintiffs are illegible. Summary judgment is therefore denied without prejudice to the plaintiffs supplementing their motion with their damages calculations and submitting a legible copy of the Red Book. See Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact . . . the court may: [] give an opportunity to properly support or address the fact . . . [or] issue any other appropriate order.").

If the plaintiffs choose to supplement their motion, they must provide a detailed itemization of the damages each plaintiff is owed, including totals for each claim and a showing of how they arrived at that sum. At minimum, it should detail how much an employee should have been paid in a pay period, how much he or she was actually paid, and how much he or she is owed for that pay period. The plaintiffs' analysis ought to be clearly related to each plaintiff's own declaration, the Red Book, and other records the plaintiffs believe to be accurate. The plaintiffs should also calculate liquidated damages and prejudgment interest. Any such additional filings need not comply with page-limitation requirements.

E.   Attorneys' Fees and Costs

The plaintiffs have moved for attorneys' fees and costs but provide no supporting documentation.  This request is thus denied without prejudice to the plaintiffs resubmitting their application.  Should the plaintiffs choose to supplement their application, they shall provide detailed timesheets, the hourly rates requested, and affidavits supporting those rates.

Conclusion

For the reasons stated above, the defendants' motion for summary judgment (Docket no. 35) is granted, and the plaintiffs' motion for summary judgment (Docket no. 46) is granted with respect to Village Red's and Mr. Serafis' liability, denied with respect to Ms. Serafis' liability, and denied without prejudice with respect to the wage claims.[2]

The plaintiffs' supplemental summary judgment papers shall be submitted by May 31, 2017.  The defendants shall respond by June 14, 2017.  The plaintiffs shall reply by June 21, 2017.  The parties need not resubmit material already on the docket.  If the plaintiffs choose not to renew their motion, then the pretrial order shall be submitted by May 31, 2017.

---

[2] Defendants' application for oral argument on these motions (Docket no. 65) is also denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       May 8, 2017

Copies transmitted this date to:

Louis Pechman, Esq.
Vivianna Morales, Esq.
Lillian M. Marquez, Esq.
Pechman Law Group PLLC
488 Madison Ave., Foor 11
New York, NY 10022

Arthur H. Forman, Esq.
98-20 Metropolitan Ave.
Forest Hills, NY 11375

John A. Mitchell, Esq.
Mitchell & Incantalupo
98-20 Metropolitan Avenue
Forest Hills, NY 11375